May it please the Court, Maggie McCletchie for Appellant and Plaintiff Nebby Solomon. The principles underlying this case are the facts that a member of the public does have a right to disagree with the police, and officers are not entitled to stop, detain, arrest, or use force against citizens to make the citizen listen to them until the citizen agrees. Particularly when viewed in the light most favorable to Mr. Solomon, the record is, in fact, full of evidence of the officers being motivated by Solomon's Mr. Solomon's disagreement with them. Mr. Solomon was ultimately right. The fashion show mall sidewalk at issue, where he was trying to film the protest from, is a public forum. Common sense, case law, and the district court's ultimate holding reinforce that he was right and that the officers was wrong. But I want to be clear. Even if Mr. Solomon had been incorrect, members of the public have a right to be wrong and voice their dissent, even with law enforcement. The district court — Can you explain that? So who is right? Is that sidewalk owned by the fashion show mall or not? It is owned. The land under that sidewalk is owned by the fashion show mall. Okay. And then why is it a public forum? Why did the district court rule it a public forum? The district court ruled that it was a public forum because there's an easement for the public. Metro policy makes clear, and that's at 2ER-230, that where there's an easement, it's a public sidewalk. The Venetian and the Fremont Street cases also — that's clearly established Ninth Circuit case law, that there — you do have a right to free speech in public forums. And the private ownership of the land underneath the sidewalk does not, in and of itself, change the character of a public forum. Does the nature of the First Amendment claim turn on whether the officers were correct? I mean, apparently they thought that this was a private property and that — and they could eject people. Does the nature of the First Amendment claim turn on what they knew or understood? No, it doesn't, because there's multiple First Amendment claims at issue. First is his right to be there. His right to be there and to fill does turn on whether it's a public forum. But his right to disagree with them does not depend on whether it's a public forum. The record is very clear, and the district court made numerous errors. But can I — sorry, can I follow up on that? Yes. If someone is on private property and the owner wants that person to leave the property and the police are there, and that person wants to disagree with the police, you don't have a First Amendment right to trespass, right? It — doesn't it hinge on the fact that it's public — a public forum? I agree with you that you don't have a right to remain. But Nevada's trespass statute, which is NRS 207.200, requires, unless there's signs posted — and the record is undisputed that there were no signs posted — no one there would have any reason to know this is public. This is private. This is allegedly private property. There's a protest across the street. The video — there's ample body cam footage in the record. The video makes — clearly shows that people are walking up and down this sidewalk, that it's open to the public. It connects right to the Las Vegas Strip. But the Nevada's trespass statute requires willfully remaining after being given a sufficient warning. In her — in her order — Well, why didn't that happen here? He was asked to leave. He did not leave immediately. And so he does — it seems — you know, if the officer was mistaken about the, you know, public forum issue, but it seems to have violated the trespass law. So he — in fact, when he was accosted, grabbed by Officer Freiman, the district court — the district court found that he was setting up his camera elsewhere. When you look at that body cam footage, and it's Exhibit 3, around, I think, 120, he's actually walking down and walking towards the Las Vegas Strip. But didn't he immediately before that say, I'm just going to set up over there? So he did say, I'm going to set up over there, but the — And then walked over there. So how — wouldn't a reasonable officer interpret that as saying, I'm going to set up over there? Well, a trespass warning has to be specific about where — what is — what is and isn't private property. The — the — the — I'm pretty sure he was warned that that area also was not. The warning — the — there is no record in the evidence that he was giving — given a formal trespass warning until he was in the van on his way to jail. And the record — the record, where he was, was right in front of the entrance. And he — his understanding was that perhaps further down the sidewalk, he could film. Right. He — Counsel, may I ask you, were the officer — did the officers advise him that he was obstructing the sidewalk? They later contended that he could have been obstructing the public sidewalk if it — if it had, in fact, been a public sidewalk. But you can't be obstructing a nonpublic sidewalk. And, in fact, it's disputed whether he was actually obstructing the sidewalk, because when you see the body cam footage, people are able to pass by, and it's actually the security guards and police officers that are taking up most of the sidewalk. Yeah, I was going to ask about that, because it seems as if the defendant's motion for summary judgment raised this issue about the size of the tripod and whether it was blocking the sidewalk. But I never saw the police officers rely on any of that in order to tell him to move. It was just that it was private property. And so my question is, can the government rely on a post hoc explanation that was never fleshed out at the moment? No, they can't. And I think the important point, too, is there is sufficient evidence in the record that — and this goes to the Velazquez case and other authorities that we cite — with regard to the probable cause or reasonable suspicion. And I want to be clear, the district court found that grabbing him was appropriate force because it was — it was to effectuate an arrest. So I believe that when Officer Fryman grabbed him, when Solomon was walking away, I think that that was a — that was not a terry stop. That was an arrest. But in any case, the district court absolutely erred. Counsel, can I — I'm sorry, I was — this is a Fourth Amendment case, correct? And a First Amendment case. Yes. But isn't it true that under the Fourth Amendment analysis, it's objective reasonableness and the officer's subjective intent is not relevant? That is correct. It's objective reasonableness based on information known to the officers.  And that's an incredibly important point. Yeah. So the ad hoc nature of the justification, it doesn't really matter if, you know, if it's objectively reasonable for that to be a reason. It does matter to whether or not they're — whether there's evidence in the record that their actual motivation was to retaliate against — was motivated by speech. Under the First Amendment part. Correct. So it's relevant on that prong. Got it. But in terms of objective reasonableness, the — there's an absolute dispute about whether he was actually obstructing the sidewalk. Well, you know, I looked at the video. I mean, if you were in a wheelchair, could you have gone through that sidewalk? Whether — when the officers were there and the fashion show mall security guard were there? No, with the tripod set up. It's — you know, it's not clear. I don't think you get an expansive view of the entire sidewalk. Okay. And there was a lot of activity that day. But the — but here's — here's, I think, the important point about trespass. He — what Officer Freiman told him was, you can't film here. The fashion show mall said, you can't film here. So — so Solomon does not willfully remain. He's not entrenched, as the district court found. He picks up his equipment and keeps walking down the street towards where he thinks he can film. Does he walk without any comment? Well, Officer Freiman follows him. And Officer Freiman, at that point, says, this additional — it's private all the way up to — all the way down here, too. At that point, Solomon does not stop and say, I'm going to film here anyway, Officer Freiman. He is continuing to walk. But he says, really? This is not a public sidewalk. And I think he points at somebody walking by. Is he walking in the direction that the police directed him to walk? They — so the police never directed him. Later on, Officer Freiman — They did not say that to him until he was put in handcuffs and taken to a different location and they — and he was surrounded by police officers. When he was originally in front of the fashion show mall, Officer Freiman never says, by the way, you can go across the street and film. He never at all says that. And when — when — when Officer Freiman informs Solomon, this — this part's a public sidewalk, too, again, Solomon does not stop. He's continuing to walk. It's unclear to me how — I'm sorry. So when he picked up the tripod and left after the first interaction, you — you agree that he was going to set up the tripod on that same sidewalk? He was going to — on the — on the sidewalk further down. He does later — So how is that not, you know, the definition of trespass? How is that — first of all, because it's not a — because it's not a — because it's not a — a private sidewalk. But the officers didn't know that at the time. That's — the problem is, is what's in the officers' understanding at the time, if the officers have a reasonable belief that it was private property? There's — the officers, according to Metro policy, there is — they knew there was an easement for the public. And according to Metro policy, where there is an easement, the public is allowed to be — The officers on the scene knew there was an easement? The officers on the — on the street, I would presume they knew about the policy. But the officers on the street — here's the — here's the — here's the additional important fact. We don't assume that what the officers say is the reason for the stop is the reason for the stop when the — when the record is full of facts showing that the officer said, the problem was you weren't listening to me. The problem was, stop, stop, the minute — Well, that was well after the fact, right? No. Immediately when he grabs — when — immediately when he grabs — when Officer Freiman, Sergeant Freiman, grabs Solomon, he says, stop, stop. He says, you're about to get in the back of a police car.  And it follows — Because he was setting up on private property after he was told that this is private property. He was not setting up. He was walking. Solomon later testified — But he was — but we all agree that that was his intent, to walk down the sidewalk and — Well, wait. Can I — is that an undisputed issue, that he was going to set up? Because I thought that they detained him before he started — before he set up again. They did detain him before he set up again. And then — and I think Officer Freiman touched his arm. He said, don't touch my arm. And — and Officer Freiman was wanting to tell him why he believed that this was private property. So, to me, it raises a triable question whether he was complying with the officers or not, because he hadn't actually set up. But I just want to make clear, are you conceding that he was going to set up further down the sidewalk? Yes. At that point, before Officer Freiman says to him, this additional part of the sidewalk is — is also private property. When Officer Freiman tells him that, he expresses surprise, and Officer Freiman grabs him. He was — the district court found that he was setting up again. He was not. And Officer Freiman — So — so we agree it's undisputed that he had the intent to set up again, but then he was stopped before he was able to do so. But it is disputed whether Officer Freiman knew that he was setting up again. And it is disputed whether him setting up again is what motivated Officer Freiman or whether it was Solomon's disagreement with him. Because Solomon was walking away. And it's actually hard for me to understand how anybody could have complied with the trespass warning. Under Nevada law, you have a warning. It's supposed to be specific. I don't think there was a specific warning. You think he was entitled to a second warning, essentially? I think he was entitled to a more specific warning. And he was also about exactly what the area was. I thought at the first interaction, wasn't he told that the entire sidewalk is private property? That is not in the record. He's told that he can't film there on the sidewalk. What the sidewalk is and how far down the private property goes was not clear. He later on gets a very specific trespass notice, but it's not until after he's in the van being transported to the jail. Further — and he certainly — he moved down the sidewalk because he believed that they meant that area was private. He didn't think they meant further down was still private. And that's all clear by the fact that when he's walking that way and Sergeant Freiman says to him, this is all private, too, he says, really? He doesn't stop and say, really, I'm going to film here anyway. He says, really? And he points to someone walking by. He points out that there's no signage and that it's unclear to him. So — Counsel, did Mr. Solomon initiate the contact with the — with the sergeant? Mr. Solomon testifies that he could — I believe that he thinks he initiated the contact. Freiman indicates that actually in his narrative, which is at 432 through 434, Freiman indicates that it was Fremont Street security officers that brought him over. So — so, undisputably, he was not committing trespass. I'd like to reserve the remainder of my time. As a matter of law, he was not because it was public property. But that's not the point. The point is whether or not they had a reasonable belief that he was committing trespass. And we'll give you a minute or two for rebuttal. Thank you. Thank you very much. Thank you, Your Honors. May it please the Court, Craig Anderson on behalf of the Las Vegas Metropolitan Police Department defendants. I'll start with Judge Sanchez's question about the probable cause issue with the setting up. It is undisputed by plaintiff in his deposition and in his narrative on ER-206-209 that his intent was to set up. That is what he testified to on 3ER-379 and what he said in his, I guess, voluntary statement, for lack of a better term. You mean setting up further down the road after the initial interaction? Yes. And what you have to keep in mind there was in Sergeant Freiman's body-worn camera at 35 seconds to a minute and three, he tells him that they are allowing filming at the trunk on this side, they're allowing here. So he was explaining that to him at the start of the encounter. But that way, to comply with that, Mr. Solomon would have to go west. He chose to go east, despite being told that the whole sidewalk was. He says, I was going to set up. That was my intent. Now, what probable cause is, is whether someone is committing a crime or about to commit a crime. Does an officer have a reasonable belief that a suspect is committing a crime or is about to? Here, with Solomon's actions, it would fall within the, at least the reasonable suspicion to detain him, to investigate what he was further doing at that point. And so, to answer your question, Judge Sanchez, he doesn't need to actually be setting up. There has to be a reasonable belief by the officer that that is his intent, that he is about to commit a crime, which he admits that was his intent. And didn't he say something to that effect? Yes. I'm going to set it further down, which was going east when he was told that he could film if he went west. Well, let me, you know, here's my concern about, I do think there are tribal issues here, because there's also evidence about whether Officer Fryman or Sergeant Fryman thought he was an agitator, was questioning whether he was, in fact, a photojournalist, and that there were other people that were filming that allegedly weren't ejected. And so, weren't there other, wasn't there other evidence raised that this might not have been a content-neutral restriction on his speech? No. So, to answer your questions there, is what Sergeant Fryman testified to was, one of his thoughts was he might be an agitator. I mean, he might have thought he might be a murderer. I mean, these are just an officer's thoughts. He didn't say that's why he acted. And he clarifies in his deposition he was not an agitator, but when I first saw it, that was a thought. That's what we could be dealing with. And the second part of your question, well, I mean, I guess, you know, because the district court said it found no tribal issues because it was private property and the officers did not want any protesters, regardless of the subject of the protest. That was the district court's analysis. But he wasn't a protester, right? He was there to film an actual protest. The fashion show mall did not want anyone protesting or stopping to film on their property. They were enforcing it all day, as you see with Officer Sergeant Fryman in a prior interaction with a Caucasian individual, where they have a similar, a briefer interaction where he complies and leaves the property. So, fashion show mall appears to have been. I mean, I actually think that factor cuts against you because that person told the police officer to go F off. And apparently was told multiple times over a longer exchange, you can't be here. And yet he wasn't arrested. And, you know, I mean, it kind of lends some credence to the equal protection claim, at least. Because he eventually left and did what the officers suggested. When he went east, he was actually going in direct contravention of what the officers told him he could do. And then, as he says, he was still planning on setting up this other. So, are you saying the other person, the Caucasian person, went west as opposed to east? He went across the street, yes, yeah. Went across the street. Yeah, in the direction that he was told. And, I mean, what that shows. Apologized because he thought that the person he told to F off, he thought it was a security guard, not a police officer. And immediately apologized when he realized it was a police officer. Correct. And, you know, obviously the officers were dealing with a lot of verbal abuse from many people that day. And, you know, that's what they do. So. But, isn't that the point? I mean, that's, you know, because the court is saying there are no genuine disputes of material fact about these issues. And one could construe the apology and all these different things in certain ways. Or they might be construed as animus or motive to discriminate. Or, you know, you're restricting Solomon's speech to disagree with officers. You know, why aren't there tribal issues here in your view? And that brings up another good point. And I think I'll answer it this way. When we talked about the tripod being set up, he was not charged with that. But probable cause can later be pled to a different crime. If you're charged with a crime, later, what matters is whether there's an objectively reasonable basis for any crime. And so where he was obstructing the sidewalk, that does, is a relevant matter for this court in this case. But there was, fair enough, but there was no evidence as to whether it was actually an obstruction. Right. The court did not take any evidence one way or the other whether the tripod was impeding people's progress on the sidewalk, whether they had to step out on the street. I mean, there are moments when I see the video and parts of the sidewalk that's outside are pretty empty. And so I just think that the court may have jumped the gun and decided there were no genuine issues as to whether there was obstruction, impeding of the sidewalk, or what was the basis for the arrest. It just seems like a lot of differing views about this. Understood. And with that analysis there, I mean, what Mr. Solomon said was his tripod was larger, estimated two and a half feet on a five foot sideway, so half the sidewalk, which forced people into a rocky uphill battle. That would be more of a qualified immunity issue as to what law would have put these officers on notice that is not obstruction. You know, that someone who's blocking half the sidewalk, and then of course he's going to be standing behind that if he had the opportunity to film, that he would then be taking up more space. He never really had the opportunity to film, and I'll grant you that. But it would have been taking up almost the entire sidewalk had he been behind the camera operating it while he filmed. And I don't dispute that there could be viable qualified immunity issues down the road, but the district court never engaged in a qualified immunity analysis. All we have before us is are there just triable, just genuine disputes of material fact on these various claims? Yeah, the district court said it was not going to the second prong of qualified immunity because it found no constitutional violation. But you are looking at this de novo, and you could find it under the second prong of the qualified immunity analysis. What would be your argument under the second prong? Well, it depends on what we're talking about. If we're talking about the obstruction, it would be what law would be out there to tell an officer that someone operating a camera that occupies more than half of a sidewalk as not obstructing. What law would tell an officer that that is not obstruction? When you have that much of the sidewalk being taken, and then remember, there's a road on one side of the sidewalk and then a rocky uphill slope, which you would not want people walking up on the other. So on that, it would be that on, I mean, the others I think are pretty clear that if we even. So I think that also with qualified immunity, one thing that's important is where, whether it's a public or private forum, I think the officers would be entitled to qualified immunity that they made a reasonable mistake in assuming that it was a private property that they could be trespassed on. And the judge essentially said that, where she said, I'm going to find this as a public forum. But I agree, the officers would not have known six years ago that to be the case. So that would make their decision to enforce that law a reasonable mistake of fact under the second prong. Well, I mean, I guess we're getting ahead of ourselves on qualified immunity. Let me ask you this about ample alternative channels. Plaintiff's argument is he was arrested within two minutes of his interaction with Sergeant Fryman. So while in theory he could have been able to do something else while he was disagreeing with the officers about the public nature of the sidewalk, he got arrested, so he never actually had an ample alternative channel to set up somewhere else. Why isn't that a tribal issue for the jury to decide? Because of what we've already talked about. He was notified that people were filming on the other side of Trump Road, that they were allowed there. And then he chose to go the opposite way. He went east when he was told he could go west, indicating that he was not going. And based upon his demeanor as well, it was pretty clear he was not going to comply. He didn't comply really at any point throughout this entire encounter. His design was to object to whatever the officers were saying. So when he went east after they had told him that was Primer Road and that he couldn't film there either, the timing to diminish that doesn't really matter. He didn't show any intent to comply or to go. If he was going west and they did it, I would agree that you might have a tribal issue with that. But he was doing the exact opposite of what he was told he could do if he wanted to continue to film. And you think there's no genuine question whether the officers might have arrested him because he had been disagreeing with them about what their respective beliefs were about the sidewalk. Yeah. Or having argued with the officers. You know, probable cause is a very low standard. Well, I guess that doesn't apply to this. I mean, it's the First Amendment question. Yeah, the First Amendment question is to, yeah, I don't think there's any tribal issues. In fact, because Sergeant Fryman was attempting to explain to him what was going on. He was the one, and they were not mad at him for protesting. They just wanted to explain to him. And he was objecting to everything they said, not allowing them to speak. But there was no sign that they were ever like, okay, that's enough talk. Which is a person's First Amendment right to do. Absolutely. But it's not a First Amendment right to obstruct the sidewalk and go further down when you're told not to. And so in most of these cases, you're going to have somewhat of a hybrid because you've got people exercising their free speech. I mean, every time the police basically arrest someone, they exercise their free speech to tell them what they think of the officers and what they think of their conduct. And so that would turn almost any arrest into a potential First Amendment claim. And I know it's not briefed in this case, but the issue is whether there was probable cause, you know, and then for the speech issue. So I don't think there is any evidence that would lead to a genuine issue of material fact that they arrested him based upon his conduct. They were very clear that you're setting up again. Based upon his speech? Based upon his speech, yes. They were always clear it was based on where he was setting up and not respecting the trespass warnings that he was given. Any other questions? I had one other question. So one of the bases that I think the LVMPD relied on was the notion that he did not sign the certification. Certificate? What do you call it? He didn't sign the citation. The citation. I looked at the statute, and it seems to me that that statute doesn't form an independent basis to commit a crime, that it's just a procedural one, that once someone is being arrested, and if they're refusing to give up their identity, then you have to take them into custody and appear before a magistrate. Am I incorrect about that? Yes. So you conflated two statutes there. Are we talking about failure to identify or are we talking about failure to sign? The failure to sign. Okay. So it's like a traffic ticket. If an officer gives you a traffic ticket, you sign that you agree to appear. If you say I'm not signing your ticket, they'll take you to jail. And that's what they told him. But there's no crime over the refusal to sign it, is there? No, no. The crime was over obstruction. And then if he had signed the citation, he would have been released on scene. Because he refused to sign, he then gave them the nondiscretionary option. They no longer had discretion. To take him into custody. They had to take him into custody. Because I think the district court found that his refusal to sign was also a basis for probable cause, and that seems wrong to me. Yeah. The probable cause was for, you know, not identifying himself and for obstruction. And then that was why they custodially arrested him rather than cited him and let him go, because the statute requires that if he's not going to agree to appear. Okay. All right. Thank you, counsel. Thank you, Your Honor. Rebuttal. So I want to be clear. When opposing counsel says that Nebby Solomon's demeanor was part of the basis for the stop, to me, that's shorthand and allows the officers to discriminate against him based both on his perceived affiliation with the protest, his race, and based on his First Amendment activity. The record, it's Exhibit 3. It's the Fryman video. The record makes clear, actually, that Officer Fryman never says anything to him about the Trump hotel and him being able to film across the street. Instead, initially, Officer Fryman comes over. They disagree about whether that specific area is private or not. And then this doesn't turn every arrest into a First Amendment case. In this case, there is evidence that Fryman was acting because he was motivated by Solomon's disagreement with him. Because, again, there was no specific trespass warning given to Solomon. There's no evidence in the record about that. Instead, he disagreed with Fryman, and he starts walking away. And they're then continuing at that point. But you agree he was walking away with the intent to set up down the street. That is true. But I want to be clear that the deposition transcript makes it clear. I'm sorry I don't have the site in front of me. But the deposition transcript, his intent when he left the initial area was to walk down and set up again. His intent at that, he did not know that he – there was no specific trespass warning that that entire area was private property. Sotomayor, are you disputing that he was told to walk west? Yes. And I'm just – he's walking towards Las Vegas Boulevard. He's walking toward – it's impossible for me to understand how he could have walked to his car and walked away without violating the trespass warning. Additionally, in the record, there's evidence that, in fact, the other journalist was told he could walk down the street. He wasn't told he could only go to the Trump – the Trump side of the street. He was told he could walk further down the sidewalk away from that main area. On east, he could go east? He just – his testimony, I believe that that – I believe that during the – I believe what he said, and it's captured during video, is that he was told that he could walk further down. And Freiman gave this – It's critical which direction. If he's walking west, he's complying with the officer's direction. If he's walking east, he's not complying with the officer's direction. So what is the – does the evidence show about that? So this is what the video says. The white male journalist taking pictures says he was advised that another police officer told him to move along the sidewalk. So he wasn't told he had to go east or west. Was that Solomon or the other journalist? That's the – that's the other – that's the other – the other person. So there is no clear – everyone was told they could only go west or across the street. There was no clear directive. Further, we have a declaration in the record from someone who observed this and saw other journalists being able to stay present and take photographs, which leads to possible reasonable inferences that it was – that it was Solomon's right. Do they have tripods? Did they have tripods that were on the sidewalk? The – I – I don't – I don't recall, but there are other people taking – taking – there were other people taking photographs. And the point is, this record has a lot of evidence that Fryman was upset and did not stop and grab Solomon because he thought Solomon had or was about to commit a crime. There is a lot of evidence that Fryman wanted Solomon to agree with him. And where there is such evidence under the Velazquez case and other cases, there – it has to go to a jury for the jury to be able to evaluate whether the officer's motive was to retaliate against them for – Were there – were there other people – so you said there were other journalists that were taking pictures or video. Were there other people that were just taking video of the protest as well? Yes. And – and were they being told to leave the sidewalk? The – the record that I have of the only – I'm not – they – there's testimony that they were later told to leave the sidewalk. But at the time that Solomon was told to leave, no. The other person that was arrested, and I think it's on the last Fryman video, was a white lady who had asked the officers about Solomon's arrest. And that's – Is there any evidence in the record of someone who was filming or – and never told to leave? Yes. That's in Laura Martin's video that she says that he's – she's observing. She's – she observes other photographers taking photos from a vantage point. He wasn't filming either. He was – I guess he was taking video. But other people were taking photos. Other people were – were there and present and were not. But what the – the difference here is that there was a tripod that was on the sidewalk. Do you have any evidence that there was a similar situation where there was a tripod that was blocking the sidewalk partially? Not that I recall. Okay. But I will just point out to the Court that when he was told that he was blocking the sidewalk, if he was – if he was told he was blocking the sidewalk, he – in the area where he was, even if there were clear – clear evidence that he was obstructing the sidewalk at that point, which there isn't, at that point, what did he do? He moved down the sidewalk to alleviate – which could have alleviated any obstruction issue. All right. Thank you, counsel. You've exceeded your time. Thank you very much. Thank you to both counsel for your helpful arguments in this case. The case just argued is submitted for decision by the Court.
judges: RAWLINSON, BUMATAY, SANCHEZ